**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| PAULA WATKINS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:24-cv-02318-JMG |
| | : | |
| MACK TRUCKS, INC., | : | |
| Defendant. | : | |

---

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                              **July 24, 2025**

## I.    OVERVIEW

Paula Watkins (Plaintiff) worked at Mack Trucks, Inc. (Defendant or the company) from 2018 to 2023. Defendant is an American truck manufacturing company that was headquartered in Allentown for over a hundred years. Much of the company's production operations remain in the area and, until recently, Plaintiff was employed in these endeavors. She now brings this employment action against Defendant alleging claims of race discrimination, sex discrimination, age discrimination, disability discrimination, hostile work environment, retaliation, failure to accommodate, and interference. Defendant has moved for summary judgment on all the claims against it. Although Plaintiff has withdrawn various claims at this stage, she opposes summary judgment on the remaining issues.[1] Because there are significant factual disputes in the record

---

[1] In her response the Defendant's motion for summary judgment, Plaintiff withdrew her claims for discrimination, hostile work environment, and retaliation based on age arising under the ADEA and the PHRA. She also withdrew her claims for disability discrimination, hostile work environment and failure to accommodate her disability arising under the ADA and the PHRA. Finally, Plaintiff withdrew her claim for FMLA interference. Therefore, Counts V, VI, and VII of her Amended Complaint are dismissed.

before the Court, Defendant's motion is only granted as to one issue: The hostile work environment claim premised on sex.

## II.    BACKGROUND

On January 2, 2018, Plaintiff—an African American woman—began working for Defendant. She started out as a Production Technician. ECF No. 50 at ¶¶ 1-2. Throughout her time with Defendant, her job duties changed several times. Around June 2018, she moved to work in the Materials Department. *Id*. at ¶ 3. In 2020, she went back to production in the gears area. *Id*. at ¶ 5. In June of the same year, she switched over to dolly staging. *Id*. at ¶ 6. Finally, on November 7, 2022, Plaintiff moved to the quality gate where she traveled up and down the production line noting any defects in the truck frames. *Id*. at ¶ 8. She worked there until her termination in June 2023. *Id*. at ¶ 9.

During her employment, Plaintiff claims she was harassed by a white male colleague named Michael Brandes. Michael Brandes worked in the gears area of production with Plaintiff. *Id*. at ¶ 18. She claims that Michael Brandes engaged in several instances of harassing behavior towards her. Both parties agree that Michael Brandes threw things at her head when he walked behind her, made innuendos at her, whispered and laughed at her, made a lot of false reports about her, clucked at her, and called her a "bitch." *Id*. at ¶¶ 21-25. Plaintiff reported Michael Brandes to all four of her supervisors, but Michael Brandes was not disciplined because, according to Defendant, he did not violate any company policies. *Id*. at ¶¶ 27, 30.

Plaintiff also alleges that she was harassed by Michael Brandes's son Damian[2] Brandes—another white male employee at the company. She asserts that Damian Brandes stared at her with his father and made her stumble when he walked past her by tripping her. *Id*. at ¶¶ 32-33. Defendant disputes that Damian Brandes tripped her, claiming that employees often bump into each other when at work because of the limited amount of space on the production line. Plaintiff further contends that she had two altercations with Damian Brandes. The first one occurred on March 15, 2023. On that day, Plaintiff was walking back from her break and Shane was walking from her work area. *Id*. at ¶ 53. She says that she tried to avoid walking into Damian Brandes, but he intentionally bumped into her anyway. *Id*. at ¶¶ 53-56.

As will be seen, the second altercation between Plaintiff and Damian Brandes takes on particular importance in this case. This one took place on May 26, 2023. Plaintiff's version of the story is that she left her station and saw Damian Brandes walking from the direction of her work area. *Id*. at ¶¶ 62-63. Similar to the first incident, Plaintiff attempted to move around Damian Brandes, but he intentionally bumped into her. *Id*. at ¶ 65. She then told him that he could not keep running into her. *Id*. at ¶ 66. Damian Brandes responded by saying, "shut the fuck up, you old bitch." *Id*. at ¶ 68. Upset, Plaintiff followed Damian Brandes, yelled at him that he was not going to keep putting his hands on her or touching her, and then walked back to her workstation. *Id*. at ¶¶ 69-71.

Defendant disputes these facts. Its main contention is that Damian Brandes did not make any derogatory statements. *Id*. at ¶ 68. Instead, Defendant says that after the two employees

---

[2] Although Damian Brandes's actual first name is "Shane," the Court will refer to him by his nickname—"Damian"—to avoid confusing him with his father, who is sometimes referred to as "Shane" as well. *Id*. at ¶ 31.

bumped into each other, Plaintiff harassed Damian Brandes by referring to him as a "faggot" and threatening him with physical violence. ECF No. 46 at ¶ 74. The parties also dispute whether any witnesses fully observed the altercation, with Damian Brandes claiming that several people heard Plaintiff call him a derogatory term and Plaintiff saying that no one could hear their exchange. *Id*. at ¶ 98. After the incident, Plaintiff filed a report against Damian Brandes and went home for the day because she was having a panic attack. ECF No. 50 at ¶¶ 72-79.

Beyond the allegations against Michael and Damian Brandes, Plaintiff claims that she experienced other instances of harassment in Defendant's workplace, these blatantly racial in nature. Specifically, she says that someone left a racist blackface image, with bulging eyes and big lips, on another person's desk at work. *Id*. at ¶ 37. Plaintiff asserts that Jermaine Robinson, one of her co-worker's, sent the racist blackface image to her so she could tell him what to do about the image. *Id*. at ¶ 38. Plaintiff also alleges that she found racially offensive imagery in the bathroom, where there were racist epithets written such as "F-U N----r" and "N-----s leave, we don't want you here." *Id*. at ¶ 41. Finally, Plaintiff asserts that white men who worked at the company would chew tobacco and spit it at her. *Id*. at ¶ 42.

In response to the May 26 altercation, Defendant's Human Resources Department launched an investigation. Plaintiff returned home from the Memorial Day weekend on May 30, 2023, and was told that she needed to meet with the Human Resources Department the next day. *Id*. at ¶¶ 80-84. Bryan Daye, the Human Resources Representative helping with the investigation, took her statement on May 31, 2023. *Id*. at ¶ 85. After the meeting, Mr. Daye told Plaintiff to go home for the day. *Id*. at ¶ 100. Although Plaintiff says that Mr. Daye never told her that she was suspended and simply told her to call him the next day, Defendant's stance is that he told her "to go home and reach out to him before returning for [her] next shift." *Id*. at ¶¶ 102-03, 136. Mr. Daye also

met with Damian Brandes and various witnesses, who allegedly corroborated Damian Brandes's assertion that Plaintiff called him a derogatory term while he did not verbally harass her. *Id*. at ¶¶ 105, 109-10.

On June 1, 2023, Plaintiff went back on Defendant's property to attend a pride flag raising ceremony. *Id*. at ¶ 116. She claims that she saw Mr. Daye, asked him if she should be on the property, and received a suggestion from him to leave. *Id*. at ¶ 119. However, she says that Mr. Daye never informed her that she was suspended or ordered her to go home. *Id*. at ¶ 120. Defendant, on the other hand, contends that Mr. Daye instructed Plaintiff to leave the property because she was not supposed to be there. *Id*. at ¶¶ 119-20.

That same day, she requested continuous leave under the Family and Medical Leave Act (FMLA) due to severe stress and anxiety. *Id*. at ¶ 125. Although Plaintiff was approved for FMLA leave through June 13, 2023, she did not receive the letter approving her leave until August 28, 2023. *Id*. at ¶ 126. On June 13, 2023, at the end of her FMLA leave, Plaintiff was terminated based on the Human Resources Department's conclusion that Damian Brandes's report of the May 26 altercation was correct and that she returned to the property without authorization. *Id*. at ¶¶ 132, 138.

### III.    LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*,

954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV.    DISCUSSION

Plaintiff has three remaining claims: (1) race and sex discrimination, (2) hostile work environment based on race and sex, and (3) retaliation. Defendant moves for summary judgment on each claim. But only the claim for a hostile work environment based on sex falters at this stage.

### a.  Race and Sex Discrimination

Plaintiff brings race and sex discrimination claims under Title VII, Section 1981, and the Pennsylvania Human Relations Act (PHRA) against Defendant in Counts I, II, and III of the

Amended Complaint. Title VII establishes that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides "[a]ll persons within the jurisdiction of the United States . . . the same right" to, *inter alia*, "make and enforce contracts." 42 U.S.C. § 1981(a). In cases lacking direct evidence of discrimination—like this one—courts apply the *McDonnell Douglas* burden-shifting framework. 411 U.S. 792, 793 (1973). This test governs employment discrimination under Title, VII, Section 1981, and the PHRA. *Onely v. Redner's Markets, Inc.*, 697 F. Supp. 3d 410, 420 (E.D. Pa. 2023).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. *Goodrich v. Tonelli's Pizza Pub*, 388 F. Supp. 3d 523, 526-27 (E.D. Pa. 2019). To demonstrate a prima facie case of race and sex discrimination, the plaintiff must show that "1) [she] is a member of a protected class, 2) [she] was qualified for the position [she] sought to attain or retain, 3) [she] suffered an adverse employment action, and 4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citation omitted). If the plaintiff makes out a prima facie case of discrimination, the burden shifts to the defendant to "articulate 'some legitimate, nondiscriminatory reason' for the adverse employment action." *Goodrich*, 388 F. Supp. 3d at 527 (citation omitted). To overcome summary judgment, the plaintiff must "prove that the employer's proffered reasons are a pretext for discrimination." *Id*. (citations omitted).

Defendant does not dispute the first three elements of Plaintiff's prima facie case. ECF No. 46 at 3-4. So the Court will assume that they are met and focus on the fourth and final element.

### i. Inference of Intentional Discrimination

To satisfy the last element of her case, Plaintiff must show that the adverse employment action—her termination—happened under circumstances that raise an inference of intentional discrimination. *See Mandel*, 706 F.3d at 169. This inference "could be supported in a number of ways, including, but not limited to, (1) comparator evidence, (2) evidence of similar racial discrimination of other employees, or (3) direct discrimination from statements or actions by her supervisors suggesting racial animus." *Jarmon v. Trader Joe's Co.*, 660 F. Supp. 3d 357, 363 (E.D. Pa. 2023) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)).

Plaintiff attempts to show intentional discrimination by relying on comparator evidence. In the main, she says that she was involved in an altercation with Damian Brandes—a white male employee—and even though they accuse each other of similar misconduct, she was fired and he was not. ECF No. 47 at 9-10.

"A plaintiff may satisfy the fourth element of a prima facie case . . . by presenting evidence that similarly situated employees, outside of the protected class, were treated more favorably." *Fennell v. Comcast Cable Commc'ns Mgmt., LLC*, 628 F. Supp. 3d 554, 573 (E.D. Pa. 2022) (citation omitted). A comparator "does not need to be identically situated," but they "must be similar to plaintiff in 'all relevant respects.'" *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 525 (E.D. Pa. 2014) (quoting *Wilcher v. Postmaster Gen.,* 441 Fed. App'x 879, 881-82 (3d Cir. 2011)) (other citations omitted). The "similarly situated" analysis turns on factors such as "whether the employees dealt with the same supervisor, were subject to the same standards, shared similar job responsibilities and the nature of the misconduct." *Id*. at 526 (citations omitted). Determining if "two individuals are similarly situated is generally a fact question for a jury to decide." *Onely*, 697 F. Supp. 3d at 422.

The Court recognizes that whether there is enough in the record for a reasonable jury to find that Plaintiff and Damian Brandes are similarly situated is a close call. However, viewing the evidence in the light most favorable to Plaintiff as the non-moving party, the Court finds that the evidence is sufficient. Supporting this conclusion is one of this Court's recent decisions—*Jenkins v. Ciocca Mgmt., Inc.*, 762 F. Supp. 3d 416, 427 (E.D. Pa. 2025).

In *Jenkins*, the plaintiff—an African American general manager of a Subaru dealership in Allentown, Pennsylvania—claimed that a white female non-manager employee at the dealership sent him "explicit, sexually charged" messages through the app Instagram. *Id*. at 420. In 2023, the defendant's Human Resources Department launched an investigation into the allegations and fired the plaintiff, who then brought against the defendant. The plaintiff provided comparator evidence by arguing that the other employee engaged in similar misconduct and was not fired. The Court acknowledged that the plaintiff and other employee "had different job responsibilities and ultimately reported to different supervisors." *Id*. at 428. But they also shared crucial similarities: They were subject to the same employment policies, they were investigated by the same Human Resources Department, and they accused each other of similar sexual harassment. *Id*. But only the plaintiff was fired. The Court concluded that "a reasonable jury could find that the employees were similarly situated as to the relevant factors as they pertain to *this case*." *Id*.

Because the fact pattern here is very similar, the Court arrives at the same conclusion. Plaintiff and Damian Brandes do not have the same job responsibilities and reported to different direct supervisors. ECF No. 52 at 4. However, they both worked in production operations, worked in the same general area, both were subject to the same company policies, and both were investigated by the same Human Resources Department after accusing each other of similar verbal harassment. *See* ECF No. 46 at ¶ 74; ECF No. 52 at ¶ 68. But only Plaintiff was terminated.

Therefore, the Court finds that Plaintiff has presented enough evidence from which a reasonable jury could conclude that Plaintiff and Damian Brandes were similarly situated. *Jenkins*, 762 F. Supp. 3d at 428; *see also Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) ("[W]hile 'similarly situated' does not mean identically situated, purported comparators must have committed offenses of 'comparable seriousness.'") (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)).

### ii. Legitimate Non-Discriminatory Reason

Having determined that the record would allow a reasonable jury to find that Plaintiff established a prima facie case of discrimination, the burden now shifts to Defendant to put forth a legitimate, non-discriminatory reason for the adverse employment action. At this step, Defendant has a "relatively light burden" to produce "evidence which, taken as true, would allow a reasonable jury to conclude that there was a legitimate, non-discriminatory reason for the adverse employment decision." *Heard v. J & G Spas, LLC*, 2024 WL 1511901, at *7 (E.D. Pa. Apr. 8, 2024) (citing *Fuentes v. Perksie*, 32 F.3d 759, 763 (3d Cir. 1994)). Defendant has provided a legitimate, non-discriminatory reason for Plaintiff's termination—that Plaintiff violated Defendant's code of conduct and work rules by harassing and threatening Damian Brandes during the May 26 altercation and by coming onto the company's property while under suspension. ECF No. 46 at 19. This is enough to satisfy Defendant's present burden. *In re Trib. Media Co.*, 902 F.3d 384, 402 (3d Cir. 2018) ("Here [the defendant] supplied a legitimate and non-discriminatory reason for [the plaintiff's] termination because it stated that he was fired for violating the station's Code of Conduct and Anti-Harassment Policy.").

### iii. Pretext

Because Defendant has provided enough evidence so that a reasonable jury could find that there was a legitimate, nondiscriminatory reason for the adverse employment action, the burden again shifts to Plaintiff "to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Terrell v. Main Line Health, Inc.*, 320 F. Supp. 3d 644, 658 (E.D. Pa. 2018). "To meet this burden, a plaintiff must identify evidence from which a reasonable jury could either: '(1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Id.* (quoting *Fuentes*, 32 F.3d at 764). The "plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (internal quotation marks and citation omitted).

Here, Plaintiff contends that her termination for violation of Defendant's code of conduct and work rules was pretextual because Defendant's reasons for firing her are disputed and false. Regarding the May 26 incident, she says that she never called Damian Brandes a derogatory name and that he was actually the one who verbally harassed her. ECF No. 47 at 11-12. Of course, Defendant disputes this version of the facts. It claims that its decision to terminate Plaintiff was based on its investigative finding that witnesses corroborated Damian Brandes's complaint that Plaintiff called him a homophobic slur during the altercation while no witness corroborated Plaintiff's report that he called her a derogatory, gendered term. ECF No. 46 at 5. Plaintiff counters that none of the witnesses could have verified Damian Brandes's complaint because no one was in the area to witness the incident. ECF No. 47 at 12. Moreover, Plaintiff argues that Defendant's

assertion that it terminated her because she visited the company's property while under suspension is pretextual because she was never actually suspended. *Id*.

Summary judgment is not appropriate at this point. "Without weighing these witnesses' credibility at this stage, the intense factual disputes over [what was said and done during after the May 26 altercation] are sufficient to preclude summary judgment. Drawing all reasonable inferences in Plaintiff's favor and evaluating the totality of the circumstances, a rational factfinder could conclude that, given Defendant's failure to discipline [Damian Brandes] at all for the same (or at least a similar) violation of company policy, its proffered nondiscriminatory reason for firing Plaintiff should not be believed." *Onely*, 697 F. Supp. 3d at 423 (citing *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 347 (3d Cir. 2022); *Jalil v. Avdel Corp.*, 873 F.2d 701, 707 (3d Cir. 1989)). "Given the competing narratives in this case," Plaintiff's race and sex discrimination claims must be permitted to proceed to a jury to resolve the consequential factual disputes here. *Jenkins*, 762 F. Supp. 3d at 430.

### b. Hostile Work Environment

Plaintiff also asserts race and sex-based hostile work environment claims under Title VII, Section 1981, and the PHRA against Defendant in Counts I, II, and III of the Amended Complaint. To establish a hostile work environment claim, a plaintiff must prove that "1) the employee suffered intentional discrimination because of his/her [race and sex], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (citation omitted) (laying out the test for hostile work environment claims based on race); *see also Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (laying out the test for

hostile work environment claims based on sex). The same standard applies across Title VII, Section 1981, and the PHRA. *See Wilson v. Columbia Gas of Pennsylvania*, 676 F. Supp. 3d 424, 441-42 (W.D. Pa. 2023).

"Title VII is not intended as a 'general civility code.'" *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)). Instead, a hostile work environment claim is only actionable "'when the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to . . . create an abusive working environment.'" *Id*. (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mandel*, 706 F.3d at 168 (internal quotation marks and citations omitted).

Defendant focuses on the second and fourth elements of the hostile work environment claims. As to the second element, Defendant argues that Plaintiff cannot establish a hostile work environment claim because the alleged conduct was neither "sufficiently severe or pervasive." ECF No. 46 at 13. As to the fourth element, Defendant asserts that Plaintiff fails to prove a hostile work environment claim because the alleged harassment would not detrimentally affect a reasonable African American woman. *Id*. at 15. Plaintiff disputes these contentions, stating that the harassment she experienced from Michael Brandes, Damian Brandes, and other white male employees, paired with the racially offensive images she was subjected to at work, constitute severe and pervasive harassment that would detrimentally affect a reasonable person in her position. ECF No. 47 at 15-17.

As a preliminary matter, the Court must decide whether to consider in its analysis any of the evidence related to Michael Brandes. Plaintiff says that Michael Brandes "made derogatory comments about black people, threw things at [her] head, made false reports about her, clucked at her, called her a 'bitch,' and stalked her." *Id*. at 15. As Defendant points out, these allegations, while serious, are untimely because "Plaintiff failed to bring a timely charge of discrimination regarding these claims." ECF No. 46 at 14; *see also Kelly-Pimental v. Pennsylvania Dep't of Corr.*, 2016 WL 616586, at *1 (W.D. Pa. Feb. 16, 2016) ("Title VII claims in Pennsylvania must be filed with the EEOC or dual-filed with the PHRC within 300 days of the unlawful discriminatory act.").

Plaintiff attempts to circumvent this timeliness issue by invoking the continuing violation doctrine. That doctrine allows "an act that falls outside the applicable limitations period [to] be deemed timely if a plaintiff shows that: (1) it is part of an ongoing practice or pattern of discrimination by the defendant; and (2) the last act evidencing the continuing practice falls within the limitations period." *Rodrigues v. Motorworld Auto. Grp., Inc.*, 2017 WL 1036477, at *6 (M.D. Pa. Mar. 17, 2017) (internal quotation marks and citation omitted). But she "provides no specific dates for [Michael Brandes's] alleged discriminatory acts." *Oliver v. Clinical Pracs. of Univ. of Pennsylvania*, 921 F. Supp. 2d 434, 446 (E.D. Pa. 2013). So the continuing violation doctrine does not apply, and the Court will not take into consideration Michael Brandes's alleged conduct.

### i.  Race

Even without the allegations against Michael Brandes, however, the remaining record could permit a reasonable jury to conclude that Plaintiff was subjected to sufficiently severe discrimination to constitute a hostile work environment based on race. Plaintiff says that she was subjected to several instances of racially offensive images: (1) she saw racial slurs written in the bathroom including "F-U N----r" and "N-----s leave, we don't want you here" and (2) one of her

co-workers sent "a racist blackface image, with bulging eyes and big lips" that was left at someone's desk to her so that she could help him figure out what to do about the image. ECF No. 46 at 16. To the extent that Defendant disputes these allegations, the Court finds that this amounts to a "genuine" factual dispute that precludes summary judgment. *See* ECF No. 50 at ¶¶ 37-41; *see also Cephalon, Inc.*, 954 F.3d at 618. Further, Plaintiff's allegations of encountering racist depictions could, on their own; "allow a reasonable jury to find that [Plaintiff's] work environment at [Mack] was objectively hostile." *Robinson v. Consol Pennsylvania Coal Co. LLC*, 425 F. Supp. 3d 433, 446 (W.D. Pa. 2019); *see also Castleberry*, 863 F.3d at 265 ("[A]lthough a racially offensive carving on a workplace wall was an isolated act, it was severe enough that a reasonable jury could find that [plaintiff's] work environment was objectively hostile."). Factoring in Plaintiff's assertions that she was treated poorly by white male employees—specifically, that Damian Brandes stalked her, intentionally bumped her twice, and tried to trip her, and that other white men would spit their tobacco at her—strengthens the record from which a reasonable jury could find that the alleged conduct was sufficiently severe. ECF No. 46 at 16.

There is also enough in the record form which a reasonable jury could determine that the conduct alleged by Plaintiff would detrimentally affect a reasonable person in her circumstance. Plaintiff alleges that she was exposed to the word "n----r" in her workplace on several occasions. As another court in this Circuit put it: "The Court expresses its sincere hope that little need be said to establish the objective offensiveness, and the severity of that offense, of the word 'n----r.'" *Nuness v. Simon & Schuster, Inc.*, 325 F. Supp. 3d 535, 547 (D.N.J. 2018). But to be absolutely clear: Such a "discriminatory remark" is "objectively offensive" and "any reasonable person similarly situated would be harshly impacted" by it. *Mikayla Overton v. The Meadows at Summit for Nursing & Rehabilitation LLC, D/B/A The Gardens at Wyoming Valley*, 2025 WL 1888217, at

*5 (M.D. Pa. July 8, 2025). As a result, a jury could also find that the alleged conduct would be detrimental to a rational person in Plaintiff's position.

Given that Plaintiff has offered enough evidence from which a jury may conclude that she meets both the second and forth prongs, and drawing all reasonable inferences in her favor, Plaintiff's allegation that she was subjected to a racially hostile work environment survives summary judgment.

### ii. Sex

Plaintiff's hostile work environment claim based on sex, however, fails. In support of her sex discrimination claim, Plaintiff says that Damian Brandes called her a "bitch" during the May 26 incident, "intentionally bumped into her twice, stalked her, and stuck out his feet to trip her as she walked past." ECF No. 47 at 16. She also alleges that other white male employees treated her poorly by spitting tobacco at her. *Id*. Unlike in the race context, the one-time use of the word "bitch" is insufficient to constitute a hostile work environment. *Onely*, 697 F. Supp. 3d at 431 ("[A] single reference by a co-worker to Plaintiff as a 'bitch' is not frequent enough to be 'pervasive' as a matter of law. . . . [And] does not as a matter of law rise to the level of 'severe' harassment for purposes of a hostile work environment claim either."). And while the other alleged conduct—including Damian Brandes stalking her and trying to trip her and the other white men spitting at her—seems unprofessional, "these types of allegations, without reference to her gender, do not support a gender-based hostile work environment claim." *Larochelle v. Wilmac Corp.*, 210 F. Supp. 3d 658, 685 (E.D. Pa. 2016) (citing *Hegyes v. U.S. Steel Corp.*, 2007 WL 218711, at *13 (W.D. Pa. Jan. 25, 2007)).

Considering the record, a reasonable a reasonable jury could not find that the alleged conduct is sufficiently severe to hostile to support a hostile work environment theory based on sex. Thus, Defendant is entitled to summary judgment on this claim.

### c. Retaliation

Plaintiff brings American with Disabilities Act (ADA) and FMLA retaliation claims in Counts IV and VIII of her Amended Complaint. "To establish a prima facie case for retaliation, the elements under the each statutory regime are 'essentially the same': [the plaintiff] 'must show that (1) [s]he engaged in a protected activity (such as taking FMLA qualifying leave, requesting a reasonable accommodation under the ADA, or making a complaint regarding an activity prohibited by Title VII), (2) [s]he suffered an adverse employment decision, and (3) there was a causal connection between the protected activity and the adverse employment decision.'" *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 437-38 (E.D. Pa. 2023) (citations omitted). The *McDonnell Douglas* burden-shifting framework applies to Plaintiff's relation claims. *Id*. at 432.

The ADA and FMLA retaliation claims move past summary judgment. First, Plaintiff can show that she engaged in a protected activity by requesting FMLA leave on June 1, 2023, which was approved through June 13, 2023. ECF No. 47 at 17-18; *see also Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 422 (E.D. Pa. 2022) (listing "requesting a reasonable accommodation under the ADA" and "taking FMLA qualifying leave" as protected activity). Second, Plaintiff suffered an adverse employment action because she was fired on June 13, 2023. ECF No. 47 at 18; *see also Dreibelbis v. Cnty. of Berks*, 438 F. Supp. 3d 304, 315 (E.D. Pa. 2020) ("It is well settled that termination is an adverse employment action.") (internal quotations marks and citations omitted). Third, the gap between the protected activity and the adverse action was twelve days. A "temporal proximity of twelve days is sufficiently unusually suggestive" to satisfy this final element. *Taylor*

*v. JFC Staffing Assocs.*, 690 F. Supp. 2d 357, 371 (M.D. Pa. 2009) (internal quotation marks and citation omitted).

Given that Plaintiff has made out a prima facie case of retaliation, we must continue along the *McDonnell Douglas* framework. But the Court has already conducted this analysis in the discrimination context and found that a reasonable jury could conclude that Defendant's legitimate, non-discriminatory reason for firing Plaintiff—that she violated Defendant's code of conduct and work rules—is pretextual because of the intense factual dispute over what happened during the May 26 altercation. The same conclusion applies here. Thus, Plaintiff has put forth enough evidence to overcome summary judgment on her retaliation claims.

## V. CONCLUSION

This case hinges on a heavily disputed altercation that took place on May 26, 2023. Because this dispute requires a jury's determination, the Court mostly denies Defendant's motion for summary judgment. However, the claim alleging hostile work environment based on sex and the claims that Plaintiff has withdrawn will be dismissed. An appropriate order follows.

BY THE COURT:

 */s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge